Tilghman C. J.
(after stating the case) delivered the opinion of the Court.
The jury, without hesitation, found for the plaintiffs, and I think they were right. It was not simply a question, whether, supposing the ship to have been insured from Cork to Limerick, she could, within the meaning of such a policy, have been said to have arrived at Limerick, so as to discharge the underwriters, before she had been anchored twenty-four hours in safety, in the Poole.- Supposing the usage of trade to be to lighten, by discharging part of the cargo at Grass Island, and to discharge the residue at the Poole, I should think the underwriters were on the ship until twenty-four hours after she had anchored in safety at the Poole. But the-true question between these parties is, Was the ship at Li *102 merick, according to the representation of the plaintiffs, and the understanding of the defendants? Now there was no other representation than that which was contained in the captain’s letter of the 27th of September, which was shewn to t*le defendants. That letter stated, that the ship was at Grass Island; and Grass Island is within the port of Lime-ft is true, therefore, that the ship was in the port of Limerick, though not at the town of Limerick. Then, when the parties, with this letter before them, called, it a representation that the ship had arrived at Limerick, they must have intended, according to the. letter, the port and notthe town of Limerick. The representation, therefore, was agreeable to the truth, and there is no ground for impeaching the verdict, as being against the evidence.
The second question, is purely matter of law. Does the marginal agreement cover the ship while lying within the port of Limerick ? When she sailed from Cork to Limerick, there was a plain deviation, by which the defendants were discharged ; and they would have remained so, but for this new agreement. Had the policy been cancelled, and a new one made by which'the ship had been insured “ from Limerick to Philadelphia,” no doubt she would not have been covered while lying in the port. The policy would not have attached before .she sailed. But it is not a new policy; it is an agreement written on the margin o.f the policy, and expressly referring to it. It must be construed, therefore, in connection with it. We must attend, in the first place, to the words of the original insurance, — “ at and from Philadelphia to Cork, and back to Philadelphia.” It is not said, at Cork, and yet i'. is .conceded, that the ship was covered, while lying at Cork, because, considering all the expressions, it cannot be doubted, that the intention was, to insure the ship during the whole voyage, from the time she left Philadelphia until her return'. There is no instrument of writing more loosely drawn than a policy of insurance, — none which stands in greater need of good faith and liberal construction. In the present case, there is no reason to suppose^ that the intent was altered, of keeping the ship covered, from Philadelphia to Philadelphia. What was the situation of the ship when the second agreement was made, and what are the words of that agreement ? The ship was. not at Cork, *103 but at Limerick; and the underwriters said, “we will see the ship from thence, instead of Cork, back to PhiladelphiaP Is it straining too hard, to say, it was intended to follow the original insurance, substituting Limerick for Cork, as if it had been from Philadelphia to Limerick, and back to Philadelphia ? I ver fy think that such was the real,meaning, and that the words will bear us out in giving that construction to the marginal agreement. It is a point lying in so narrow a compass, as not to admit of much argument. No general principles are involved. It is a question of construction of this individual policy. I am of opinion that the ship was covered while lying in the port, and therefore judgment should be entered for the plaintiffs. .
Judgment for the plaintiffs^